## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **BRADLEY JAMES AND** | § | |
| **INDEPENDENT RESOURCES** | § | |
| **OPERATING COMPANY, INC.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:15−cv−03102** |
| | § | |
| **CHUBB CUSTOM INSURANCE** | § | |
| **COMPANY AND U.S. RISK, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## CHUBB'S RESPONSE TO PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

James H. Moody, III
Bar No. 14307400
S.D. Bar No. 17723

QUILLING, SELANDER, LOWNDS,
   WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
hmoody@qslwm.com
cwill@qslwm.com

**ATTORNEY FOR CHUBB CUSTOM**
**INSURANCE COMPANY**

# TABLE OF CONTENTS

I. SHORT SUMMARY OF ARGUMENT ................................................................................. 1

II. ARGUMENTS AND AUTHORITIES................................................................................. 2

   A. Plaintiffs' efforts to avoid the application of the Underground Equipment Hazard
      Exclusion, and Damage to Property of Others Exclusion are wholly ineffective. ............ 2

      1.    Plaintiffs' claim must be evaluated as a claim for physical injury to tangible
           property (the well), not a claim for loss of use of tangible property (the lease) that
           has not been physically injured. .............................................................................. 2

      2.    The Damage to Property of Others Exclusion. ...................................................... 3

      3.    The Underground Equipment Hazard Exclusion .................................................... 7

   B. The damages awarded to the Plaintiffs in the underlying action are not "loss of use"
      damages.................................................................................................................... 8

   C. In any event, if Plaintiffs are correct in characterizing their loss as a loss of use of
      tangible property that has not been physically injured, then Plaintiffs' loss falls squarely
      within the scope of the Chubb Policy's exclusion for "Damage to Impaired Property or
      Property Not Physically Injured." .................................................................................. 10

III. CONCLUSION ................................................................................................................ 12

# <u>INDEX OF AUTHORITIES</u>

## Cases

*Advanced Network, Inc. v. Peerless Ins. Co.,*
  190 Cal. App. 4th 1054, 1063-64, 119 Cal. Rptr. 3d 17, 25 (2010) .......................................... 9

*Cherokee Water Co. v. Forderhause,*
  641 S.W.2d 522, 525 (Tex.1982)........................................................................................... 2

*Collin v. American Empire Ins. Co.,*
  21 Cal.App.4th 787, 817, 26 Cal.Rptr.2d 391 (Cal.Ct.App.1994) ........................................ 8, 9

*Cook v. Admiral Ins. Co.,*
  438 F. App'x 313 (5th Cir. 2011)........................................................................................ 5, 6, 7

*Employers Cas. Co. v. Block,*
  744 S.W.2d 940, 944 (Tex.1988)........................................................................................... 4

*GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.,*
  1994 WL 383909, at *4 (N.D. Ill. July 19, 1994), <u>aff'd</u>, 64 F.3d 1112 (7th Cir. 1995) ....... 9, 10

*Great Am. Lloyds Ins. Co. v. Mittlestadt,*
  109 S.W.3d 784, 786-87 (Tex. App. – Ft. Worth 2003, no writ) .............................................. 4

*Md. Cas. Co. v. Tex. Comm. Bancshares, Inc.,*
  878 F.Supp. 939, 942–43 (N.D.Tex.1995) .............................................................................. 9

*Mid-Continent Cas. Co. v. Camaley Energy Co.,*
  364 F.Supp.2d 600, 606 (N.D. Tex. 2005) ............................................................... 3, 5, 6, 12

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.,*
  532 F.3d 398, 403 (5th Cir. 2008) ........................................................................................ 3

*Nortex Oil & Gas Corp. v. Harbor Ins. Co.,*
  456 S.W.2d 489, 491 (Tex. Civ. App. - Dallas 1970, no writ.)........................................... 9, 10

*Nutmeg Ins. Co. v. Pro-Line Corp.,*
  836 F. Supp. 385, 388 (N.D. Tex. 1993) .............................................................................. 3

*State Farm Fire & Cas. Co. v. Gandy,*
  925 S.W.2d 696, 714 (Tex.1996)......................................................................................... 4

*Trinity Universal Ins. Co. v. Cowan,*
  945 S.W.2d 819, 821 (Tex.1997)......................................................................................... 4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **BRADLEY JAMES AND** | § | |
| **INDEPENDENT RESOURCES** | § | |
| **OPERATING COMPANY, INC.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. 4:15−cv−03102** |
| **v.** | § | |
| | § | |
| **CHUBB CUSTOM INSURANCE** | § | |
| **COMPANY AND U.S. RISK, INC.** | § | |
| | § | |
| **Defendants.** | § | |

### CHUBB'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE KEITH P. ELLISON, UNITED STATES DISTRICT JUDGE:

COMES NOW, Chubb Custom Insurance Company ("Chubb"), Defendant in the above-styled and numbered cause, and files this its Response to Plaintiffs' Motion for Summary Judgment and for such would respectfully show unto the Court as follows:

### I.

### SHORT SUMMARY OF ARGUMENT

While it is true that the common oil and gas lease is a fee simple determinable estate in realty, and can qualify as "tangible property" for purposes of insurance coverage, because the Chubb Policy does not cover purely economic losses, the damages assessed against Victory Drilling in the form of "lost profits" are only potentially recoverable if they represent consequential damages flowing from damage to the well being drilled. Stated otherwise, Plaintiffs claim must be evaluated as a claim for physical injury to tangible property (the well), not a claim for loss of use of tangible property (the lease) that has not been physically injured.

When the Court does this, it is clear the Damage to Property of Others Exclusion and the Underground Equipment Hazard Exclusion apply to bar coverage.

Even if Chubb is incorrect in the above position, the damages Plaintiffs were awarded in the underlying action are not for the "loss of use" of the lease, but rather, for the "loss" of that lease. Therefore, because the Chubb Policy only covers the "loss of use" of tangible property that has not been physically injured, the damages Plaintiffs are seeking to recover are not covered by Chubb's Policy.

Furthermore, if the Court decides to view Plaintiffs' claim as one for the loss of use of tangible property that has not been physically injured, then Plaintiffs' claim for coverage still fails because Plaintiffs' loss falls squarely within the scope of the Chubb Policy's exclusion for "Damage to Impaired Property or Property Not Physically Injured."

For all of the above reasons,[1] then, Chubb is, as a matter of law, entitled to a "take nothing" judgment in its favor.

## II.

## ARGUMENTS AND AUTHORITIES

### A.  Plaintiffs' efforts to avoid the application of the Underground Equipment Hazard Exclusion, and Damage to Property of Others Exclusion are wholly ineffective.

Plaintiffs attempt to avoid the application of the Damage to Property of Others Exclusion and the Underground Equipment Hazard Exclusion by focusing on the specific language of each exclusion. As discussed below, however, Plaintiffs' arguments are without merit.

### 1.  Plaintiffs' claim must be evaluated as a claim for physical injury to tangible property (the well), not a claim for loss of use of tangible property (the lease) that has not been physically injured.

The common oil and gas lease is a fee simple determinable estate in realty, *Cherokee*

---

[1] Plus the additional reasons raised in Chubb's Motion for Summary Judgment. [Doc. 18].

<u>CHUBB'S RESPONSE TO PLAINTIFFS'</u>
<u>MOTION FOR SUMMARY JUDGMENT</u> -                                    **Page 2**

*Water Co. v. Forderhause,* 641 S.W.2d 522, 525 (Tex.1982), and as such, can qualify as "tangible property" for purposes of insurance coverage. *Mid-Continent Cas. Co. v. Camaley Energy Co.,* 364 F. Supp. 2d 600, 606 (N.D. Tex. 2005). Because the Chubb Policy does not cover purely economic losses, *Nutmeg Ins. Co. v. Pro-Line Corp.,* 836 F. Supp. 385, 388 (N.D. Tex. 1993), however, the damages assessed against Victory Drilling in the form of "lost profits" are only potentially recoverable if they represent consequential damages flowing from damage to the well being drilled. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 403 (5th Cir. 2008). Stated otherwise, Plaintiffs claim must be evaluated as a claim for physical injury to tangible property (the well), not a claim for loss of use of tangible property (the lease) that has not been physically injured.

### 2. The Damage to Property of Others Exclusion.[2]

In contesting the application of the Damage to Property of Others Exclusion, Plaintiffs focus on the phrases "that particular part" and "performing operations."[3] Existing case law, however, indicates plaintiffs are wrong in connection with each of their arguments.

The Damage to Property of Others Exclusion, in part, provides that the Chubb Policy does not apply to **property damage** to:

1. *that particular part* of real property on which [Victory Drilling is] . . . *performing operations*, if the **property damage** arises out of *those operations*;[4] *("Subpart 1")* and

2. *that particular part* of any property that must be restored, repaired or replaced because [Victory Drilling's work] was incorrectly performed on it.[5] *("Subpart*

---

[2] It should be noted that Plaintiffs only focus on two of the seven subparts of the Damage to Property of Others Exclusion that are discussed in Chubb's Motion for Summary Judgment. [Doc. 18]. While Chubb denies that Plaintiffs are correct in their analysis of these two subparts, the other subparts would still apply to bar coverage.

[3] Plaintiffs' MSJ [Doc. 21] at p. 2.

[4] Joint Appendix [Doc. 20] ("App.") at 183 (Emphasis (*italics*) added).

[5] *Id.*

*2").*

Here, according to the underlying court's Findings of Fact and Conclusions of Law:[6]

1. Victory Drilling failed "to exercise the level of care which a reasonably prudent drilling contractor would have done in the same or similar circumstances *during the drilling operations in question*."[7]

2. This negligence resulted in Victory Drilling braking off "extremely valuable drilling equipment in the well bore,"[8] that Victory Drilling was unable to remove.[9]

3. Victory Drilling then walked off the job without completing the well.[10]

4. As a result of Victory Drilling not completing the well, IROC's mineral lease was terminated,[11] which, in turn, "resulted in damages to IROC in the form of lost profits that IROC would have received [had] the Well [been] completed."[12]

When asked to apply exclusions such as those quoted above to similar circumstances, others courts have consistently held that no coverage exists. *See, e.g., Mid-Continent Cas. Co. v. Camaley Energy Co.,* 364 F. Supp. 2d 600, 606 (N.D. Tex. 2005); *Cook v. Admiral Ins. Co.,* 438 F. App'x 313, 317-319 (5th Cir. 2011).

---

[6] Only Chubb's duty to indemnify is at issue in this case. The duty to indemnify arises from proven, adjudicated facts. *See, Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821 (Tex.1997) No duty to indemnify arises unless the underlying litigation establishes liability for damages covered by the insuring agreement of the policy. *See, Employers Cas. Co. v. Block,* 744 S.W.2d 940, 944 (Tex.1988), *disapproved on other grounds, State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 714 (Tex.1996). Consequently, because a duty to indemnify arises only if the underlying litigation establishes liability, the Court should only look to the facts established in the underlying litigation to determine if a duty to indemnify exists. *Great Am. Lloyds Ins. Co. v. Mittlestadt,* 109 S.W.3d 784, 786-87 (Tex. App. – Ft. Worth 2003, no writ).

[7] App. at 108; Findings of Fact and Conclusions of Law ("F&C"), at ¶ 34) (Emphasis added).

[8] App. at 109; (F&C ¶ 43).

[9] App. at 108; (F&C ¶ 26).

[10] App. at 109; (F&C ¶ 43).

[11] App. at 112; (F&C ¶ 14).

[12] App. at 112; (F&C ¶ 17).

**CHUBB'S RESPONSE TO PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT -**                                                    **Page 4**

For example, in *Camaley, supra,* Camaley, Rodessa, and Tally, insureds under a policy of insurance issued by Mid-Continent Casualty Company ("Mid-Continent"), were sued by a party ("Kendall") for which they were drilling a well when, during the drilling of the well, the well bore crossed over the lease line into the neighboring leasehold, resulting in the constructive eviction of Kendall from its leasehold.[13] When the defense of Camaley, Rodessa, and Tally was tendered to Mid-Continent, Mid-Continent sought a declaration that it had no duty to defend or indemnify any of them.[14]

In addressing the issues before him, Judge Buchmeyer initially determined that Kendall's suit alleged property damage that resulted from an occurrence.[15] He then addressed the exclusions raised by Mid-Continent. One of these exclusions ("j(5)") was identical to what is labeled Subpart 1 above.[16] In ruling that that exclusion applied to bar coverage for the loss, the Court stated as follows:

> Here, the negligence of Camaley, Rodessa and Tally while drilling on the *Kendall* plaintiff's lease caused the alleged property damage. Therefore, these damages appear to fall squarely within exclusion "j(5)". Camaley, Rodessa and Tally argue that because the *Kendall* petition alleges damages to the neighboring property as well, "j(5)" is inapplicable. However, damage to neighboring property is irrelevant to coverage dispute at issue (sic). Camaley, Rodessa and Tally are being sued by the *Kendall* leaseholders for property damage inflicted on the *Kendall* lease, not the neighboring property. If Camaley, Rodessa and Tally were being sued by the owners of the neighboring property for property damage, "j(5)" would be inapplicable. But here, the lawsuit is being brought by very people (sic) who hired Camaley, Rodessa and Tally for damage to the property they were hired to work on. Therefore, Camaley, Rodessa and Tally's negligent conduct is excluded from coverage.

*Camaley, supra*, 364 F. Supp. 2d at 607.

---

[13] 364 F. Supp. 2d at 602.

[14] *Id.*

[15] 364 F. Supp. 2d at 604.

[16] 364 F. Supp. 2d at 606.

Just as in *Camaley*, Victory Drilling was being sued by the "very people who hired [Victory Drilling] for damage to the property [Victory Drilling was] hired to work on," and Victory Drilling "while drilling on [Plaintiffs'] lease caused the alleged property damage. Therefore, these damages . . . fall squarely within" the exclusion labeled Subpart 1.

When it comes to distinguishing *Cook*, Plaintiffs do nothing more than make the same arguments that were rejected by the Fifth Circuit (i.e., there was a gap in time between the occurrence (Victory Drilling getting equipment stuck in the well) and the resulting damage (Plaintiffs' loss of the lease), and the damages assessed (lost profits resulting from loss of the lease) were not for damage to "that particular part" of the property (the well) on which Victory Drilling was working).[17] According to the Fifth Circuit:

> The plain language of [Subpart 1] makes it applicable to property damage that "arises out of" operations that take place while the insured is "performing operations."

*Cook, supra,* 438 F. App'x at 318. Here, the damages awarded to Plaintiffs in the underlying action are consequential damages imposed by law for Victory Drilling getting equipment stuck in the well. Thus, because the "property damage" (getting equipment stuck in the well) undeniably occurred while Victory Drilling was "performing operations," and Plaintiffs' damages "arose out of" those operations, Plaintiffs "gap in time" argument fails.

Similarly, Plaintiffs cannot distinguish *Cook* by ignoring the damage to the well ("that particular part" of real property on which Victory Drilling was working) and characterizing their loss as "damage to the entire lease."[18] Doing so is improper because, as noted above, a "loss,"

---

[17] Plaintiffs' MSJ [Doc. 21] at pp. 11-12.

[18] Plaintiffs' MSJ [Doc. 21] at p. 13.

such as a loss of a mineral lease, which results in a purely economic loss (lost profits) is not "property damage."[19] Thus, the focus has to be on the well, not the lease.

As for the well, Victory Drilling was hired to drill and complete the well, and when the equipment became stuck in the well, the entire well was destroyed, not just part of it. In the words of the Fifth Circuit, a well bore "is not a component of a well that functions independently, and without which the rest of the well would continue to function."  438 F. App'x at 318. Thus, because it was the well that needed to be repaired, replaced, or completed in order for Plaintiffs to avoid losing the lease, and Victory drilling was working on the well when it was damaged, Plaintiffs' "that particular part" argument fails.

### 3.  The Underground Equipment Hazard Exclusion

Plaintiffs' sole argument for avoiding application of the Underground Equipment Hazard Exclusion[20] is identical to their "that particular part" argument that was just discussed. Plaintiffs want the Court to ignore the damage Victory Drilling caused to the well and focus solely on the alleged "loss of use of the entire lease."[21] As before, though, the loss of the lease was a consequence of the well being damaged. Thus, the damages awarded to Plaintiffs in the underlying case are for damage to (a) "wells or holes through which exploration for or production of any substance is carried on,"[22] or (b) "machinery, equipment, tools or materials

---

[19] See discussion and cases, *supra*, at p. 3.

[20] The Chubb Policy expressly provides that it "does not apply to **property damage** included within the **underground equipment hazard**." App. at 183. Thereafter, "**underground equipment hazard**" is defined to include "all property damage to: wells or holes through which exploration for or production of any substance is carried on; or machinery, equipment, tools or materials located in or forming a part of wells or holes." *Id.*

[21] Plaintiffs' MSJ [Doc. 21] at p. 13.

[22] App. at 183.

located in or forming a part of wells or holes."[23] As such, the Underground Equipment Hazard

Exclusion applies to bar coverage.

**B. The damages awarded to the Plaintiffs in the underlying action are not "loss of use" damages.**

> "Loss of use" of property is different from "loss" of property. To take a simple example, assume that an automobile is stolen from its owner. The value of the "loss of use" of the car is the rental value of a substitute vehicle; the value of the "loss" of the car is its replacement cost.

*Collin v. American Empire Ins. Co.,* 21 Cal.App.4th 787, 817, 26 Cal.Rptr.2d 391

(Cal.Ct.App.1994). Further:

> . . . the terms "loss of use" and "loss" are not interchangeable for insurance purposes. If we were to hold otherwise, we would have to ignore the words "of use" in the term "loss of use." "We must give significance to every word of a contract, when possible, and avoid an interpretation that renders a word surplusage." (Citation omitted*.) . . .* Coverage for "loss of use" does not apply to an underlying action in which the claimant seeks only the replacement value of converted property. While the "loss of use" provision in [the insured's] CGL policy is not modified by the term "temporary," the impermanent nature of "loss of use" damages is implicit. Borrowing *Collin*'s stolen car example, the measure of damages of a stolen car cannot be its rental value ad infinitum on the ground there was a permanent "loss of use" of the property. Interpreting the term "loss of use" to include a permanent loss would lead to absurd results.

*Advanced Network, Inc. v. Peerless Ins. Co.,* 190 Cal. App. 4th 1054, 1063-64, 119 Cal. Rptr. 3d

17, 25 (2010).

Consistent with these California cases, courts applying the law of Texas have held that

when the term "property damage" is defined as it is in the Chubb Policy, claims based on a

permanent loss of use are not covered. *See, e.g., Md. Cas. Co. v. Tex. Comm. Bancshares, Inc.,*

878 F.Supp. 939, 942–43 (N.D.Tex.1995) (concluding that a policy that covered "loss of use of

property" did not cover an insured bank's alleged conversion of trust property); *see also*, *Nortex*

*Oil & Gas Corp. v. Harbor Ins. Co.,* 456 S.W.2d 489, 491 (Tex. Civ. App. - Dallas 1970, no

---

[23] *Id.*

writ.) (concluding that a policy which covered "loss of property" did not cover a claim against the insured based on its conversion of third-party oil); *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 1994 WL 383909, at *4 (N.D. Ill. July 19, 1994), aff'd, 64 F.3d 1112 (7th Cir. 1995) (applying Texas law). For example, in *GATX, supra,* the court, applying Texas law, first addressed whether a permanent loss of use of property through conversion or theft could qualify as "property damage" under a policy defining "property damage" the way the Chubb Policy does:

> It is undisputed that both underlying claims seek to recover for the theft, or conversion, of petroleum products. At issue is whether such conversion constitutes a "loss of use" under the policy. The great weight of case authority on this issue concludes that it is not.

*GATX Leasing Corp.*, 1994 WL 383909, at *3. After doing so, it discussed the difference between the "loss of use" of property, and the "loss" of property:

> Although there is a distinction between "loss of use" and "loss of property", "loss of use" is narrower than loss of property. Loss of use is intended to compensate for a temporary loss and thereby is determined by rental value; loss of property is intended to compensate for a permanent loss and is determined by replacement cost. To classify the underlying plaintiffs' claims, the Court finds that they sought damages for "loss of property", not "loss of use". There is no indication that either TCR or Arco sought the "rental value" of the petroleum products that were missing. Thus, the conversion claims are not covered for two reasons: (1) they are broader than the loss insured; and (2) as "loss of property" is broader than "loss of use", the Court concludes that the outcome in *Nortex,* a "loss of property" case, governs this case.

*GATX Leasing Corp.*, 1994 WL 383909, at *4 (citations omitted).

Here, Plaintiffs begin their Motion by characterizing their loss as a "loss of use" of IROC's mineral lease[24], but the damages they sought and recovered are for the "loss" of that lease. In fact, Plaintiffs all but acknowledge this fact when they note that ". . . IROC *lost the use*

---

[24] Plaintiffs' MSJ [Doc. 21] at p. 1.

*of its lease*, was unable to complete planned drilling operations, and eventually *lost the lease*."[25] Therefore, regardless of whether Plaintiffs have actually sustained covered "loss of use" damages, the fact that they chose to recover damages for the "loss" of IROC's lease, rather than the "loss of use" of that lease, means that their claim for coverage fails.

**C. In any event, if Plaintiffs are correct in characterizing their loss as a loss of use of tangible property that has not been physically injured, then Plaintiffs' loss falls squarely within the scope of the Chubb Policy's exclusion for "Damage to Impaired Property or Property Not Physically Injured."**

Chubb believes the Court should evaluate coverage based on the existence of physical injury to tangible property (the well), not loss of use of tangible property (the lease) that has not been physically injured. In the unlikely event the Court disagrees, however, Plaintiffs' claim for coverage is still barred.

Specifically, the Chubb policy contains a "Damage to Impaired Property or Property Not Physically Injured" exclusion.[26] That exclusion provides as follows:

This insurance does not apply to **property damage** to:

- **impaired property**;[27] or

---

[25] Plaintiffs' MSJ [Doc. 21] at p. 8.

[26] App. at p. 147.

[27] "Impaired property" is defined by the Chubb policy to mean:

… tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

- It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

- You have failed to fulfill the terms or conditions of the contract or agreement;

If such property can be restored to use by:

- the repair, replacement, adjustment or removal of **your product** or **your work**;

- or your fulfilling the terms or conditions of the contract or agreement.

App. at p. 163.

- property that has not been physically injured;

arising out of any:

- defect, deficiency, inadequacy or dangerous condition in **. . . your work**; or

- Delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms and conditions.

This exclusion does not apply to the loss of use of other tangible property resulting from sudden and accidental physical injury to your product or your work after it has been put to its intended use.

Judge Buckmeyer applied an identical exclusion ("Exclusion 'm'") in a case where, as here, the owner of a mineral lease was complaining that its lease had been damaged by the manner in which a well was drilled.[28] In ruling that the exclusion applied to bar coverage, the Court stated as follows:

> Mid-Continent argues that exclusion "m" applies because [the drillers'] negligence caused the [mineral lease owners] to lose their leasehold, and that amounts to a breach of contract. [The mineral lease owners] argue that the exclusion does not apply because the damages claimed in the [underlying] petition do not fall within the definition of "impaired property." However, exclusion "m" applies to *both* "impaired property" or "property that has not been physically injured," such as the leasehold at issue here. Because the damage alleged in the [underlying] petition was caused by [the drillers'] negligent drilling, the conduct falls under exclusion "m" because such conduct constitutes a defect, deficiency, inadequacy, dangerous condition in their work. In the alternative, the bore deviation constitutes [the drillers'] failure to perform their work for the [underlying] plaintiffs in accordance with their contract. Therefore, exclusion "m" applies.

*Mid-Continent Cas. Co. v. Camaley Energy Co.,* 364 F. Supp. 2d 600, 607-08 (N.D. Tex. 2005) (Emphasis in the original).

Thus, even if Plaintiffs are correct in characterizing their loss as a loss of use of tangible property that has not been physically injured, Plaintiffs' loss is barred from coverage by the Chubb Policy's exclusion for Damage to Impaired Property or Property Not Physically Injured.

---

[28] 364 F. Supp. 2d at 602.

## III.

## CONCLUSION

Chubb requests (1) that the Court rule, as a matter of law, (a) that the Policy does not cover the damages awarded to Plaintiffs by the Judgment, (b) that Plaintiffs' recovery is barred as a result of Victory Drilling's failure to comply with the Policy's conditions, and/or (c) that Plaintiffs' claim against the Policy fails due to the doctrine of concurrent causes, (2) that a "take nothing" judgment be entered in Chubb's favor, and (3) that Chubb be awarded its court costs.

WHEREFORE, PREMISES CONSIDERED, Chubb requests that it be granted the relief requested above, and such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted

*/s/ James H. Moody, III*
JAMES H. MOODY, III
State Bar No. 14307600
S.D. Tex. Bar No.

QUILLING, SELANDER, LOWNDS,
   WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
hmoody@qslwm.com

**ATTORNEYS FOR CHUBB CUSTOM INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record on this 27th day of July, 2016, via the Court's CM/ECF noticing system.

*/s/ James H. Moody, III*
JAMES H. MOODY, III